# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JACQUELINE OLSON, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br> v.<br><br>RETRIEVAL-MASTERS CREDITORS BUREAU INC.,<br><br>   Defendant. | Case No.: 18-cv-389<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Jacqueline Olson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6.     Defendant Retrieval-Masters Creditors Bureau, Inc. ("RMCB") is a foreign corporation with its principal offices located at 4 Westchester Plaza, Suite 110, Elmsford, New York 10523.

7.     RMCB is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.     RMCB is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.     RMCB is a "debt collector" as defined in the FDCPA, 15 U.S.C. § 1692a, and the WCA, Wis. Stat. § 427.103(3).

## FACTS

### *August 9, 2017 Letter*

10.     On or about August 9, 2017, RMCB mailed Plaintiff a debt collection letter regarding an alleged debt, allegedly owed to "Mason Shoe Company" and associated with Plaintiff's purchase with "Stoneberry in the amount of $586.47." A copy of this account statement is attached to this complaint as Exhibit A.

11.     The alleged debt referenced in Exhibit A was allegedly incurred for personal, family, or household purposes.

12.     Upon information and belief, the letter in Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13.     Upon information and belief, the letter in Exhibit A is a form debt collection letter used by Defendant to attempt to collect the alleged debt.

14.     Upon information and belief, Exhibit A was the first written communication Defendant mailed Plaintiff regarding the alleged debt referenced in Exhibit A.

2

15. The reverse side of Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice, that the debt or any portion thereof is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

16. Exhibit A also contains the following:

| You Owe: | Mason Shoe Company |
|---|---|
| Charge Date | December 28, 2015 |
| Account Number | ▮▮▮7614C2G |
| Pin Number: | ▮▮▮6731 |
| Name: | Jacqueline T Olson |
| Street Address: | 3701 S Alabama Ave |
| City, State Zip: | Milwaukee, WI 53207-4004 |

Exhibit D.

17. Moreover, Exhibit A states:

> You may call us at the telephone number above if you have any questions. Otherwise, please mail your payment today, along with the bottom portion of this letter.

Exhibit A.

18. The statement that the consumer "may call us at the telephone number above if you have any questions" is false, deceptive, and misleading to the unsophisticated consumer because it overshadows the debt validation notice and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing.

19. 15 U.S.C. § 1692g(a)(4) states:

   (a) Notice of debt; contents

3

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> …
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

20. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4).

21. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> (b) Disputed debts
>
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

22. <u>Exhibit A</u> confusingly directs communications between the debtor and RMCB other than payment, including disputes, to RMCB's telephone number. *See Osborn v. Ekpsz,*

4

*LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990).

23. The instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute debts to believe that an oral dispute is equivalent to a dispute made in writing, and that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing. *See Clark v. Absolute Collection Serv.,* 741 F.3d 487, 491 (4th Cir. 2014); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

24. The overshadowing effect is compounded because RMCB provides the validation notice on the reverse side of the letter but the offending language is on its face. *See e.g.,*

5

*Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990) ("The invitation to telephone unaccompanied by any warning that the notice must be in writing to be effective obscures the dispute validation notice required by 15 U.S.C. § 1692g.").

25. <u>Exhibit A</u> contradicts, overshadows and confuses the 15 U.S.C. § 1692g notice.

*Facts Relating to Plaintiff's Seventh Avenue Account*

26. On or about November 16, 2017, RMCB mailed Plaintiff a debt collection letter regarding an alleged debt, allegedly owed to "Seventh Avenue." A copy of this account statement is attached to this complaint as <u>Exhibit B</u>.

27. The alleged debt referenced in <u>Exhibit B</u> was allegedly incurred for personal, family, or household purposes.

28. Upon information and belief, the letter in <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

29. Upon information and belief, the letter in <u>Exhibit B</u> is a form debt collection letter used by Defendant to attempt to collect the alleged debt.

30. <u>Exhibit B</u> contains the following:

> Amount Due: $990.42

<u>Exhibit B</u>.

31. <u>Exhibit B</u> states that the "AMOUNT DUE" is $990.42.

32. <u>Exhibit B</u> also contains the following:

> Take this opportunity to settle your account by sending us **$990.42** today.

<u>Exhibit B</u>.

33. <u>Exhibit B</u> is false, deceptive, misleading, and confusing as to the amount owed.

6

34. Exhibit B states that the "AMOUNT DUE" is $990.42 but also encourages the debtor to "take this opportunity to settle your account" for $990.42.

35. Exhibit B is confusing and misleading to the unsophisticated consumer as to whether the balance of the account is actually $990.42 or some greater amount.

36. The normal meaning of "settling" a debt means that the debt is permanently resolved in exchange for a payment of a portion of the balance.

37. Moreover, in the context of credit reporting, there is a difference between resolving an account by paying the account in full and resolving the account by settling it in full. Therefore, even if the unsophisticated consumer were to assume the balance of the account was actually $990.42, she may still be confused as to whether the account would be *reported* as "paid in full" or "settled in full." *See e.g., Molton v. Experian Info. Solutions, Inc.*, 2004 U.S. Dist. 659, at *13 (N.D. Ill. Jan. 21, 2004); *Nielsen v. E*Trade Mortg. Corp.*, 2015 U.S. Dist. LEXIS 39781, at *4-5 (E.D. Mich. Mar. 30, 2015); *Shaw v. Experian Info. Solutions, Inc.*, 2016 U.S. Dist. LEXIS 134991, at *31-32 (S.D. Calif. Sept. 28, 2016); *Keller v. Trans Union LLC*, 2017 U.S. Dist. LEXIS 283, at *7-8 (D. Ariz. Jan. 3, 2017).

38. On the face of Exhibit B, it is unclear whether a $990.42 payment would pay the account in full or simply settle the account, and it is unclear how RMCB, or the creditor, would report the account to credit reporting agencies in the event the consumer tendered a $990.42 payment.

39. The confusion is compounded because Exhibit B expressly states that the account is being reported to the credit reporting agencies:

> Since your account has been reported to one or more national credit bureaus, it can lead to problems in attempting to obtain a personal loan, mortgage or credit card.

Exhibit B.

40. On or about January 1, 2018, RMCB mailed Plaintiff a debt collection letter regarding the same alleged "Seventh Avenue" debt. A copy of this account statement is attached to this complaint as Exhibit C.

41. Upon information and belief, the letter in Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

42. Upon information and belief, the letter in Exhibit C is a form debt collection letter used by Defendant to attempt to collect the alleged debt.

43. Exhibit C contains the following:

> Our client has authorized us to issue this demand for payment in full no later than 01/16/18. To assure proper handling, please mail your payment of **$990.42** with the bottom portion of this letter.

Exhibit C.

44. Exhibit C demands "payment in full no later than 01/16/18."

45. Exhibit C is false, deceptive, and misleading to the unsophisticated consumer.

46. The unsophisticated consumer would understand a request for payment by a date certain two weeks in the future to mean that, if she paid the debt by that date, she would avoid having the account be reported notwithstanding prior letter.

47. Exhibit C implies to the unsophisticated consumer that the debt has not yet been reported to consumer reporting agencies.

48. In fact, according to Exhibit B, by the time payment would be "due" on January 16, 2018, the debt would have already been reported for at least two months.

49. The implication in Exhibit C directly contradicts the information expressly stated in Exhibit B.

50. The misleading and confusing statement in Exhibit C is not cured simply because the consumer has previously received information that might clarify it. *See Lukawski v. Client*

8

*Servs.*, 2013 US Dist. LEXIS 124075, at *10-12 (M.D. Penn. Aug. 29, 2013) (failure to disclose interest is misleading, even though a letter sent six weeks prior disclosed that the account was bearing interest); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) ("an unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely").

51. The misrepresentation that the account has not yet been reported is material.

52. The purpose of the misleading statement is to lead the consumer to believe that she may avoid the reporting of derogatory credit information by paying the account before it reflects negatively on her credit history.

53. A debtor that is indebted to several creditors may prioritize payments to creditors who have not yet reported their debts with the purpose of preventing these debts from being reported.

54. Negative items, such as delinquent accounts, both lower a consumer's credit score and generally remain on the consumer's "credit report" for seven years.

55. Falsely claiming that an account will not be reported to a credit reporting agency as long as the debtor promptly pays is a tactic that preys upon the consumer's concern about her credit score.

56. Misrepresenting whether a debt has been, or is scheduled to be, reported is a material misrepresentation because it makes it impossible for debtors to prioritize payment of their debts. *See Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 748 (E.D. Mich. July 12, 2017) ("An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives.") (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir. 2015),

*rev'd on other grounds*, *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)); *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process[.]").

57. Plaintiff was confused by Exhibits A-C.

58. The unsophisticated consumer would be confused by Exhibits A-C.

59. Plaintiff had to spend time and money investigating Exhibits A-C.

60. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-C.

## THE FAIR DEBT COLLECTION PRACTICES ACT,
## 15 U.S.C. § 1692 ET SEQ.CA

61. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

62. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were

10

misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

63. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

64. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

65. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers'

11

allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

12

when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

66. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

67. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

68. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of---the character, amount, or legal status of any debt."

69. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

13

70. 15 U.S.C. § 1692f generally prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."

71. 15 U.S.C. § 1692g(a) states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

72. 15 U.S.C. § 1692g(b) requires that the validation notice be stated in a non-confusing manner and prohibits debt collectors from communicating with the debtor in ways that overshadow or are inconsistent with the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

### *The WCA*

73. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

74. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

75. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

76. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

77. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

78. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

79. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

15

Case 2:18-cv-00389-DEJ    Filed 03/12/18    Page 15 of 20    Document 1

80. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

81. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

82. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

83. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

84. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

85. The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying

documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## COUNT I – FDCPA

86. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

87. Exhibit A instructs the consumer that "You may call us at the telephone number above if you have any questions" on its face and provides the validation notice on the reverse side.

88. Exhibit A does not adequately inform the unsophisticated consumer that she must raise the dispute in writing in order to effectively trigger her rights to require the debt collector to provide verification of the debt or cease its attempts to collect the debt.

89. An oral, telephonic dispute would not invoke the consumer's rights under 15 U.S.C. § 1692g(b).

90. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g.

## COUNT II – FDCPA

91. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

92. Exhibit B states that the amount due is $990.42 but also states that a payment of $990.42 would "settle" the account.

93. Exhibit B is false, deceptive, and misleading to the unsophisticated consumer as to the amount of the debt and whether tendering payment of $990.42 would result in the debt being reported as "paid in full" or "settled in full."

94. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).

## COUNT III – FDCPA

95. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96. <u>Exhibit B</u> states that debt has been reported but <u>Exhibit C</u> implies the debt has not been reported because it states a date certain approximately two weeks from the date of <u>Exhibit C</u> by which payment must be made.

97. <u>Exhibits B and C</u> are false, deceptive, confusing, and misleading to the unsophisticated consumer.

98. The misrepresentation is material, as it would provoke the consumer into paying on false pretenses – that the payment would improve or limit damage to his or her credit score.

99. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f.

## COUNT IV – WCA

100. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

101. <u>Exhibits A-C</u> contain false, deceptive, and misleading statements.

102. <u>Exhibit A</u> misleads the consumer as to how to effectively exercise her rights to dispute the debt, and effectively misleads her into foregoing those rights.

103. <u>Exhibit B</u> contains misleading statements as to the balance of the account and false threats as to how the debt will be reported.

104. <u>Exhibits B and C</u> provide confusing and contradictory statements as to whether the debt is being reported.

105. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), 427.104(1)(L).

## CLASS ALLEGATIONS

106. Plaintiff brings this action on behalf of two Classes.

107. Class I consists of:

    (a) all natural persons in the State of Wisconsin (b) who were sent an initial collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between March 12, 2017 and March 12, 2018, inclusive, (f) that was not returned by the postal service.

108. Class II consists of:

    (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters in the form represented by Exhibits B and C to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between March 12, 2017 and March 12, 2018, inclusive, (f) that was not returned by the postal service.

109. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

110. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and WCA.

111. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

112. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

113. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

114. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(b) actual damages;

(c) statutory damages;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: March 12, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com